UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 15-478 RS |
| Plaintiff, | [PROPOSED] |
| v. | **DETENTION ORDER** |
| GAGE WYNNE, | |
| Defendant. | |

## I.  BACKGROUND

Defendant Gage Wynne is charged in an indictment with violations of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute heroin) and 21 U.S.C. § 841 (possession with intent to distribute 1 kilogram or more of heroin).  The government moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pre-Trial Services prepared a full bail study.  On October 28, 2015, the Court conducted a detention hearing.  Defendant was present, represented by Assistant Federal Public Defender Candis Mitchell. Assistant United States Attorney Frank Riebli appeared for the government.  For the reasons stated below, the Court orders that Defendant be detained.

## II.  LEGAL ANALYSIS

The Bail Reform Act, 18 U.S.C. § 3142(f), requires that the government prove by a preponderance of the evidence that there are no conditions that reasonably will assure the Defendant's appearance as required, and that the government prove by clear and convincing evidence that there are no conditions which reasonably will assure the safety of the community.  In cases such as this, where there is probable cause to believe that the Defendant committed a violation of the Controlled Substances Act and faces a maximum of 10 years or more in prison, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the Defendant's appearance as required and the safety of the community.  18 U.S.C. § 3142(e)(3)(A).  The presumption of detention shifts the

DETENTION ORDER
CR 15-478 RS                                                                 1

burden of production to the defendant; the ultimate burden of persuasion remains with the government. See United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008).  The Defendant must show "some credible evidence" to rebut that presumption.  United States v. Chen, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992).  Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases."  Chen, 820 F. Supp. at 1208 (citing United States v. Motamedi, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

In evaluating whether pretrial release is appropriate, the Court considers (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release.  18 U.S.C. § 3142(g); Motamedi, 767 F.2d at 1407.  Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f).

### A. Nature and Circumstance of the Offense and Weight of the Evidence

In this case, the government proffered that the Defendant was arrested while in his car and that the car contained a secret compartment containing approximately four pounds of heroin.  These facts are sufficient to give rise to the rebuttable presumption of detention.  The government also proffered that the police found $100,000 in cash buried in the yard of the house where the Defendant resided, as well as four firearms: a pistol and an assault rifle registered to the Defendant, and an unregistered pistol and an unregistered assault rifle.

### B. The Defendant's History and Characteristics and the Nature and Seriousness of the Danger to Any Person or the Community

Defendant is 23 years old and has minor criminal history.  He reported no mental health issues. It also appears that the Defendant has lived in the greater Bay Area for most of his life.  According to Pre-Trial Services, the Defendant has an active warrant from Siskiyou County for failure to appear.

The bail study noted discrepancies in the Defendant's reported residence – the Defendant

reported that he had been living with his father in South San Francisco for the three years prior to his arrest in this case, whereas the Defendant's father reported that the Defendant had been living with his mother in Belmont. According to the government, the defendant's own social media posts and police surveillance indicated that the Defendant had been living with his mother in Menlo Park. The Defendant's address with DMV was neither of those addresses – he listed one of his co-defendant's address in San Francisco as his own. In addition, the government proffered that the Defendant had been living in Sonoma County until early this year, when he moved to his mother's residence in Menlo Park because of increased law enforcement activity focused on him in Sonoma County. The government also proffered that the Defendant had stated in social media posts that he had a condominium in Las Vegas, though this was not reported to Pre-Trial Services. The government further noted that, based on the Defendant's social media posts, the Defendant appeared to travel frequently to San Diego, Mexico, Hawaii and Las Vegas. His trips to Mexico appear to have been made without a passport.

There were also discrepancies noted in the Defendant's reported income. The Defendant reported to Pre-Trial Services that he made approximately $18,000 per year breeding dogs. But the Defendant's social media posts appear to depict a lavish lifestyle involving expensive restaurants, clothes and vacations. This indicates income far in excess of the income the Defendant reported to Pre-Trial Services. Further, the government represented that the police recovered $100,000 in cash buried in the yard of the house where the Defendant was residing, and that the police found empty wrapping in the garage similar to the wrapping around the buried money. In addition, the government proffered that the Defendant had referred to himself in social media posts as a rich man.

Finally, the government proffered facts related to alleged violence or threats of violence involving the Defendant. Specifically, the government reported that the Defendant had bragged on social media about committing a stabbing that took place in Guerneville on December 29, 2014, saying that the "only crazy shit I did was poke one of his little homies for owing me 3000 and talking hell shit like I wasn't gonna do shit," and that he bragged about a fight with another person in Forestville in March, 2015, saying that he "[g]et in them moods where I wanna pick a fight wit anybody!" Further, the government proffered that the Defendant made threats against other people in April and May, 2015, and that these threats were related to people who were poaching on the Defendant's territory – meaning,

DETENTION ORDER
CR 15-478 RS                                     3

the area where he distributed drugs – or who had in some way angered him.  The government also proffered that the persons with whom the Defendant communicated on these social media posts offered to commit violent acts for him.

Factors that suggest the Defendant may pose a risk of non-appearance include his transient residence, his apparent ties to property in Las Vegas and his frequent trips out of the district and out of the country without a passport, his lack of formal employment, his questionable financial resources and apparent access to large sums of cash, the absence of suitable sureties and his active warrant from Siskiyou County.  Mitigating factors include his long residence in the Northern District of California and his lack of mental health problems.  Factors that suggest the Defendant poses a danger to the community are his active warrant, his repeated claims of involvement in violence and his repeated threats of violence and his association with others who have offered to commit violent acts for him.  Mitigating factors are the facts that the Defendant has no mental health problems and no prior felony convictions.

In light of the above, the Court finds that the government has met its burden to show by a preponderance of the evidence that there is no condition or combination of conditions that reasonably will assure that the Defendant will appear as required.  The Defendant has not rebutted the presumption against him.  In particular, the Court finds that the Defendant's unstable residence history, his frequent trips out of the district, his apparent access to large sums of cash and the significant penalties the Defendant faces in this case show that there are no conditions that can assure his appearance for court in this case.  The Court further finds that the government met its burden to show by clear and convincing evidence that there is no condition or combination of conditions that reasonably will assure the safety of the community.  The Defendant has not rebutted the presumption against him.  The facts of this case, the Defendant's youth, his efforts to present himself as a tough guy, his claimed involvement in multiple acts of violence and his threats of further violence towards people who anger him show that there are no conditions that would assure the community's safety if the Defendant were released.  The Court has considered the possibility of releasing the Defendant to a halfway house.  But the Court understands a halfway house is not meant to be a secure facility or provide any assurance that the Defendant will appear as directed.  For these reasons, the Court finds that release to a halfway house will not reasonably mitigate the risks described above.  Finally, the Defendant's father and aunt appeared at the hearing.

Pre-Trial Services previously had determined that the Defendant's father was not a suitable surety, given his own criminal history. The Court agrees with this assessment.

### III. CONCLUSION

In light of the Defendant's history, the nature and circumstance of the instant offense and the weight of the evidence, the Court finds that the Defendant presents a danger to the community and/or poses a risk of non-appearance, and that there are no conditions or combinations of conditions which reasonably would assure the Defendant's appearance of the safety of the community if the Court released the Defendant. For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. On order of a court or the United States, or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED: November 2, 2015

_____
HON. NANDOR J. VADAS
United States Magistrate Judge